49



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Melanie Renee Hayes

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**v.**

David Rosenbaum

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**Case: 1:16-cv-13583**
**Judge: Ludington, Thomas L.**
**MJ: Morris, Patricia T.**
**Filed: 10-06-2016**
**IFP Melanie Renee Hayes v. David Rosenbaum (dw)**

Jury Trial: ☒ Yes ☐ No
*(check one)*

# Complaint for a Civil Case

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Melanie Renee Hayes |
| Street Address | 726 Wadsworth St |
| City and County | East Tawas Iosco |
| State and Zip Code | MI 48730 |
| Telephone Number | 989 820 2606 |
| E-mail Address | hospiceangeliccare@yahoo.com |

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | David Rosenbaum - President/CEO |
| Job or Title (if known) | Caring Hospice Services, LLC |
| Street Address | 525 Rt 70 West, Suite B15 |
| City and County | Lakewood Ocean |
| State and Zip Code | NJ 08701 |
| Telephone Number | 732. 901. 6600 |
| E-mail Address (if known) | |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title (if known) | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address (if known) | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title (if known) | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address (if known) | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title (if known) | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address (if known) | |

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal question ☒ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

**A. If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

**B. If the Basis for Jurisdiction Is Diversity of Citizenship**

1. The Plaintiff(s)

a. If the plaintiff is an individual
The plaintiff, *(name)* Melanie Renee Hayes,
is a citizen of the State of *(name)* Michigan.

b. If the plaintiff is a corporation
The plaintiff, *(name)* ______________________,
is incorporated under the laws of the State of *(name)*
______________________, and has its principal place of business in the State of *(name)* ______________________.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

a. If the defendant is an individual
The defendant, *(name)* David Rosenbaum, is a citizen of the State of *(name)* NJ. *Or* is a citizen of *(foreign nation)* ______________________.

b. If the defendant is a corporation
The defendant, *(name)* ______________________, is incorporated under the laws of the State of *(name)* ______________________, and has its principal place of business in the State of *(name)* ______________________. *Or* is incorporated under the laws of *(foreign nation)* ______________________, and has its principal place of business in *(name)* ______________________.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3. The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

$285,000 - Sale of Business (owed for over a year) +
$360,000 loss revenue + $80,000 Loss of wages +
$250,000 PAIN + Suffering which Totals
$975,000

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

It is with great sadness that I have to write this however with deep respect for the Judicial System.
The facts of this Case are as follows:
As I was interested in selling my business I obtained a Broker through American Health Care Capital who acquired a buyer by the name of David Rosenbaum - Caring Hospice Services who agreed to Purchase Hospice Angels Care Inc. (my business) by signing a Purchase Agreement on 8-19-2015.
Pursuant to the Purchase Agreement, Caring Hospice Services (the buyer) agreed to Purchase Hospice Angels Care's Hospice License, Provider Number Etc. in exchange for the sum of $285,000.
The $285,000 was never Paid and a year has now gone by!
Hospice Angels Care in good faith provided the buyer with a stellar Hospice license + Provider Number.
All conditions of the Purchase Agreement were met by Hospice Angels Care Inc. →

3. The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

$285,000 - Sale of Business (owed for over a year) + $360,000 loss revenue + $80,000 Loss of wages + $250,000 PAIN + Sufferings which Totals $975,000

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

It is with great sadness that I have to write this however with deep respect for the Judicial System.
The facts of this Case are as follows:
As I was interested in selling my business I obtained a Broker through American Health Care Capital who acquired a buyer by the name of David Rosenbaum - Caring Hospice Services who agreed to Purchase Hospice Angels Care INC. (my business) by signing a Purchase Agreement on 8-19-2015.
Pursuant to the Purchase Agreement, Caring Hospice Services (the buyer) agreed to Purchase Hospice Angels Care's Hospice License, Provider Number etc. in exchange for the sum of $285,000.
The $285,000 was never Paid and a year has now gone by! Hospice Angels Care in good faith provided the buyer with a stellar Hospice license + Provider Number.
All conditions of the Purchase Agreement were met by Hospice Angels Care Inc. →

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

As a result of non payment of the promised $285,000 for the sale of the Haspie Business.
I have lost a monthly revenue of approx. $30,000 per month which what was the amount being made at the time of the Sale
$30,000 /month x 12 mos + = $360,000 + Interest
Additionally, I have lost my yearly salary of $80,000/year.
My credit has been destroyed due to financial loss $25,000
The stress of this has affected my ability to procure employment as well as affected me physically, = $125,000
I continue to suffer financially to the point of foreclosures + repossessions = $100,000
In Total $ 975,000

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 10-6, 2016.

Signature of Plaintiff [signature]

Printed Name of Plaintiff

**Additional Information:**

**American HealthCare Capital**
CORPORATE FINANCE • MERGERS & ACQUISITIONS

August 22, 2012

Justin Henry
FNA Land & Development Consultants
7508 Pebble Drive
Fort Worth, TX 76118

This Confidentiality Agreement ("Agreement") is effective August 22, 2012, by and between FNA Land & Development Consultants ("Prospective Buyer") and Hospice Angelic Care, Inc. ("The Company") located in Tawas City, MI.

Whereas, The Company desires to share certain information with the Prospective Buyer for the purpose of evaluation for a possible acquisition;

Whereas, the Prospective Buyer understands and acknowledges that such information concerning The Company is confidential and proprietary information ("Proprietary Information").

Now, therefore, in consideration of the agreement set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which The Company and the Prospective Buyer hereby acknowledge The Company and the Prospective Buyer acknowledge and agree as follows:

1. Recitals: The above recitals are true and correct and are made a part of this agreement.

2. Confidentiality:

   a) The Prospective Buyer agrees and covenants that all information, knowledge, data and records, whether written or otherwise, of whatsoever kind or nature not generally available to the public, including but not limited to, any information which relates to patient and/or physician names or medical information, The Company's operations, policies and procedures, personnel matters, financial information, business and operational plans, company contracts, or other information or documents of a confidential nature relating to the ownership or operation of The Company or concerning any officers, directors, owners, shareholders, employees, agents, servants, representatives and/or consultants of The Company, which is acquired or is made available to the Prospective Buyer shall be regarded as strictly confidential and/or trade secrets of The Company.

   b) The Prospective Buyer agrees that, for a period of two years, it will not at any time reveal, communicate or divulge any Proprietary Information to any persons, corporations, or other entities without the express prior written consent of The Company.

**American HealthCare Capital**
CORPORATE FINANCE • MERGERS & ACQUISITIONS

c) The Prospective Buyer further agrees that it will deliver all Proprietary Information, and any copies, duplicates or reproductions of whatsoever kind relating to Proprietary Information, which are in the Prospective Buyer's possession, to The Company at any time upon The Company's request.

d) The Prospective Buyer agrees to take all necessary steps to prevent disclosure of Proprietary Information to any non-employees or non-assigns of the Prospective Buyer.

e) The Prospective Buyer and The Company agree that any information furnished with respect to The Company has been provided by The Company.

3. Miscellaneous:

a) This agreement shall be binding upon, and inure to the benefit of the undersigned parties and their respective legal representatives, assigns, directors, officers, shareholders, agents, servants and employees. The parties hereto are not, nor shall they become by virtue of this Agreement or any actions taken pursuant thereto, joint ventures, partners, employed by one and the other, or agents of one and the other.

b) The Prospective Buyer recognizes American HealthCare Capital as the original procuring cause for the buyer in the possible purchase of the identified business opportunity within this document.

c) The Prospective Buyer agrees that all correspondence, letters of intent and contracts will make reference to American HealthCare Capital as the original procuring cause with an automatic copy to American HealthCare Capital concurrently when sent to the seller.

In witness whereof, The Company and the Prospective Buyer have each caused its respective corporate name to be signed by its duly authorized officer effective on the date first written above.

| | |
|---|---|
| Justin Henry 8/22/2012<br>Principal<br>FNA Land & Development Consultants | Melanie Hayes 8/22/2012<br>Director<br>Hospice Angelic Care, Inc. |

**Caring Hospice Services**
**525 Route 70 West, Suite B-15**
**Lakewood, NJ 08701**
**732-901-6600**

May 20, 2015

Via E-Mail
Melanie Hayes
Hospice Angelic Care, LLC
430 W M-55
Tawas City, MI 48763
Email: hospiceangeliccare@yahoo.com

**Re: Letter of Intent**

Dear Melanie:

The purpose of this letter is to set forth the terms pursuant to which Caring Hospice Services, LLC (the "Buyer") is willing to purchase the business conducted by Hospice Angelic Care, LLC (the "Seller") at 430 W M-55, Tawas City, MI 48763 (the "Business").

The following is an outline of our terms:

I. *Purchase of Seller's Business.*

A. *Assets.* The Buyer shall purchase from the Seller certain of the Seller's assets used in the Seller's Business. Seller will deliver the selected assets to the Buyer free and clear of any liens/encumbrances.

B. *Liabilities.* The Buyer will not assume any of the liabilities or obligations of the Seller.

C. *Purchase Price.* The total purchase price for the Business is Two Hundred Eighty Five Thousand Dollars ($285,000.00) (the "Purchase Price"). The Purchase Price is to be paid as follows:

1. Upon the signing of an APA (as defined below), a refundable deposit of Fourteen Thousand Two Hundred Fifty Dollars ($14,250.00) to be held in escrow by Buyer's attorney pursuant to the terms of an escrow agreement; and

2. Two Hundred Seventy Thousand Seven Hundred Fifty Dollars ($270,750.00) paid by wire transfer of immediately available funds at the closing.

II. *Miscellaneous*

A. *Asset Purchase Agreement; Conditions to Closing.* The parties will work towards negotiating and executing a definitive Asset Purchase Agreement ("APA") as soon as possible. The closing shall be conditioned upon the Buyer's satisfaction of its due diligence review of the Seller and the Business (in Buyer's sole discretion) and compliance with all legal and regulatory requirements applicable to the proposed transaction and receipt of all required governmental third party consents and approval, including, without limitation Michigan and CMS approval of change of ownership.

B. *Access to Information*. Seller shall permit Buyer and its representatives and agents full and complete access to the Seller's books and records, facilities, suppliers, landlord, independent accountants and attorneys, as requested by Buyer in connection with its due diligence review of the Seller and the Business.

C. *Closing*. Both parties agree to take reasonable measures to proceed with closing within thirty (30) days from the execution of the APA, subject to the terms in Paragraph II.A, above.

D. *Expenses*. Each party shall be responsible for any costs and expenses incurred by it in connection with this letter of intent and the transactions contemplated herein.

E. *No Shop*. From the date of the signing of this letter of intent by Buyer and Seller, Seller shall not, directly or indirectly, through any representative or otherwise, solicit or entertain offers from, negotiate with or in any manner encourage, discuss, accept or consider any proposal of any other person relating to the acquisition of all or any portion of the equity, assets, operations, or business of Seller whether through direct purchase, merger, consolidation or other business combination. This provision shall survive the termination of this letter of intent.

F. *Non-Binding Nature of Letter of Intent*. This letter of intent is non-binding and is subject to our entering into definitive legal agreements detailing the terms of the transaction, including the APA which shall be mutually acceptable to the Buyer, the Seller, and our respective attorneys. Notwithstanding the foregoing, the provision herein regarding "no shop" (Section II.E) shall be a valid and binding obligation of the parties hereto.

G. *Termination*. This letter of intent shall automatically terminate within one year or upon the mutual written termination of this letter of intent by Buyer and Seller, whichever occurs first.

If the terms of the transaction outlined above meet with your approval, please indicate your acceptance by countersigning this letter of intent in the space provided below.

Sincerely,
**Caring Hospice Services, LLC**

By: [signature]
Name:
Title: Owner

Agreed and Accepted as of this
21st day of May 2015

**Hospice Angelic Care, LLC**

By: [signature]
Name: Melanie Hayes
Title: Director

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "Agreement") is entered into as of the 19th day of August 2015, by and between **CARING HOSPICE SERVICES OF MICHIGAN, LLC**, a Michigan limited liability company ("Buyer"), and **HOSPICE ANGELIC CARE, INC.** a Michigan corporation ("Seller").

**WHEREAS**, Seller desires to sell, and Buyer desires to purchase, certain of the assets of Seller (the "Assets") for the consideration, upon the terms and subject to the conditions set forth in this Agreement.

**NOW, THEREFORE**, in consideration of the promises, the provisions and the respective agreements in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. <u>Purchase and Sale</u>.

1.1 <u>Assets</u>. Upon the terms and subject to the conditions set forth in this Agreement, on the Closing Date, Seller shall sell, grant, convey, assign, transfer and deliver to Buyer, and Buyer will purchase and acquire from Seller, the following assets (collectively the "Assets"):

(a) books and records, which include patient medical records, patient lists and patient contact information, but exclude Seller's organizational records, its tax records and its financial records;

(b) all rights of Seller under its hospice Medicare and Medicaid provider agreements, including but not limited to Provider Transaction Access Number 23-1614 (the "Provider Agreement"), to the extent such rights are transferable under applicable law; and

(c) the personal property listed on <u>Schedule 1.1</u> hereto.

1.2 <u>Bill of Sale</u>. At the Closing (as defined below), Seller shall execute and deliver to Buyer a Bill of Sale and Assignment Agreement in the form attached as <u>Exhibit A</u> (the "Bill of Sale") under the terms of which Seller shall sell, grant, convey, assign, transfer and deliver the Assets to Buyer.

1.3 <u>Patient Medical Records</u>. It is the responsibility of Buyer to maintain compliance with all areas mandated under Title II Subtitle F Section 261-264 of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Public law 104-191, titled "Administrative Simplification." This shall ensure confidentiality regarding protected health information ("PHI"), as promised in the regulation.

2. <u>Consideration</u>.

2.1 <u>Purchase Price</u>. Upon the terms and subject to the conditions set forth in this Agreement, and in exchange for the sale, grant, conveyance, assignment, transfer and delivery of the Assets, Buyer agrees to pay to Seller a purchase price in the principal sum of Two Hundred

(c) Seller has legal title to all of the Assets, free and clear of all liens, pledges or encumbrances.

(d) Seller is and always has been in compliance in all material respects and has complied with all laws affecting Seller, licensure of its personnel and the conduct of the hospice business. Seller has not received any notice, nor to Seller's knowledge is there any investigation pending, asserting any noncompliance with governmental requirements in connection with the hospice business.

(e) Seller has not submitted, or caused to be submitted, any claim in connection with any referral to the hospice business which violated any applicable self-referral law, including 42 U.S.C. § 1395nn, as amended (known as the "Stark Act"), or any applicable state self-referral law.

(f) Seller has not submitted, or caused to be submitted, any claim for payment to any payer source, either governmental or non-governmental, in violation of any false claim or fraud law, including but not limited to 31 U.S.C. § 3729, as amended (known as the "False Claim Act"), 42 U.S.C. § 1320a-7b(b) (known as the "Anti-Kickback Statute"), 42 U.S.C. § 1320a-7a (known as the "Civil Monetary Penalties Law"), or any other applicable federal or state false claim or fraud law.

(g) Neither Seller nor any of Seller's officers, directors, or managerial employees has been convicted of, charged with or investigated for a Medicare, Medicaid or state health program related offense, or convicted of, charged with or investigated for a violation of federal or state law related to fraud, theft, embezzlement, breach of fiduciary responsibility, financial misconduct, obstruction of an investigation of controlled substances, or has been debarred, excluded or suspended from participation in Medicare, Medicaid or any other federal or state health program, as defined in 42 U.S.C. § 1320a-7b(f) ("Federal Healthcare Program"), for, or been subject to any order or consent decree of, or criminal or civil fine or penalty imposed by any Governmental Authority.

(h) This Agreement and the Bill of Sale are legal, valid and binding obligations of Seller.

6. Representations and Warranties of Buyer. Buyer hereby represents and warrants to Seller as follows:

(a) Buyer is a limited liability company duly organized and validly existing under the laws of the State of Michigan.

(b) Buyer has the power and authority to enter into and to carry out the terms of the transactions contemplated by this Agreement and the Bill of Sale.

(c) This Agreement and the Bill of Sale are legal, valid and binding obligations of Buyer.

(d) Buyer, together with its advisors, has the requisite knowledge and experience to understand the risks involved in the transactions contemplated hereby.

(e) Buyer has had access to, and the opportunity to review and examine, Seller's books, records, documents, data and any other information requested by Buyer, and is not relying on any representations or warranties of Seller other than Seller's express representations and warranties made in this Agreement.

7. Conditions Precedent to Buyer's Obligation to Close. Buyer's obligation to purchase the Assets and to take the other actions required to be taken by Buyer at the Closing are subject to the satisfaction, at or prior to the Closing, of the following, which conditions may be waived by Buyer, in whole or in part:

(a) the issuance to Buyer by the State of Michigan of a license to operate a hospice program.

(b) approval by the Department of Health and Human Services Centers for Medicare and Medicaid Services of the Change of Ownership (as defined in the Medicare Enrollment Application Form CMS-855A) of the Provider Agreement.

(c) approval by the Michigan Department of Health and Human Services of the Change of Ownership) of the Medicaid Provider Agreement.

8. Indemnification.

(a) Seller shall indemnify, defend, and hold harmless Buyer from and against any losses suffered, incurred, or paid, directly or indirectly, by Buyer, or that Buyer becomes otherwise subject to or liable for, that are caused by, result from, relate to, arise out of, are based on, or are in the nature of any inaccuracy of any representation or warranty contained in Section 5.

(b) Buyer shall indemnify, defend, and hold harmless Seller from and against any losses suffered, incurred, or paid, directly or indirectly, by Seller, or that Seller becomes otherwise subject to or liable for, that are caused by, result from, relate to, arise out of, are based on, or are in the nature of any inaccuracy of any representation or warranty contained in Section 6.

9. Termination.

9.1 Termination Events. By notice given prior to or at the Closing, this Agreement may be terminated as follows:

(a) by Buyer if any condition in Section 7 has not been satisfied as of 12/31/2016, or if satisfaction of such condition becomes impossible and Buyer has not waived such condition on or before such date; or

(b) by mutual consent of Buyer and Seller.

9.2 Effect of Termination. In the event of the termination of this Agreement pursuant to Section 9.1 above, all obligations of the parties under this Agreement, other than Buyer's obligations under Section 2.2 above, will terminate.

10. Miscellaneous.

10.1 Notices. Any notice, request, acknowledgment, consent, or other communication which any party hereto is required or permitted to give to another party shall be in writing and shall be deemed given (a) on the date of actual delivery or rejection of delivery, if by hand or by recognized overnight delivery service, (b) when confirmed by electronic receipt, if by facsimile, or (c) three (3) days after being mailed, if by registered or certified mail, postage prepaid, return receipt requested, and shall be directed to the address or facsimile number of such party specified below (or at such other address or facsimile number as such party shall designate by like notice):

If to Seller: Melanie Hayes<br>Hospice Angelic Care, LLC<br>314 W M-55<br>Tawas City, MI 48763

If to Buyer: David Rosenbaum<br>Caring Hospice of Michigan, LLC<br>c/o 525 RT 70 West, Suite B16<br>Lakewood, NJ 08701<br>Facsimile: (732) 905-4929

10.2 Name. At no time prior to or following the Closing or the termination of this Agreement for any reason shall Buyer have the right to use Seller's name or any related or similar trade names, trademarks, service marks, logos or other proprietary designations, nor shall Buyer have the right to trade on Seller's goodwill.

10.3 Waiver. The failure of any party to insist in any one or more instances upon the performance of any of the terms and conditions of this Agreement shall not be construed as a waiver or relinquishment of any right granted hereunder, or of the future performance of any such term or condition.

10.4 Entire Agreement. This Agreement, together with the Bill of Sale, sets forth the entire understanding of the parties hereto with respect to the subject matter hereof and supersedes any prior understandings or agreements among the parties, whether written or oral, to the extent related to the subject matter hereof, including without limitation the Letter of Intent. No party hereto has relied upon any promise, representation, warranty, agreement, covenant, or undertaking, express or implied, other than those expressly set forth herein.

10.5 Amendment. This Agreement may not be amended, modified or altered in any manner, except pursuant to the terms of a written instrument signed by each of the parties hereto.

10.6 Invalid Provision. The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions hereof, and this Agreement shall thereafter

be construed in all respects as if such invalid or unenforceable provisions were omitted, provided that no party is, as a result thereof, deprived of the enjoyment of its substantial benefits under this Agreement.

10.7 Governing Law; Jurisdiction; Venue; Service of Process. This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan without giving any effect to any choice or conflicts of law provision or rule (whether of the State of Michigan or of any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Michigan. Each party hereto irrevocably consents to the exclusive jurisdiction and venue of the courts of the State of Michigan and any federal court located therein in connection with any action or proceeding arising out of or relating to this Agreement and any document or instrument delivered pursuant hereto, and consents to service of process by certified or registered mail, return receipt requested, at the address to which notices are to be given.

10.8 Assignment; Binding Nature. No party may assign any of its rights or delegate any of its obligations under this Agreement without the prior written consent of the other party. Notwithstanding the preceding sentence, this Agreement shall be binding upon and inure to the benefit of the parties hereto, their successors and permitted assigns.

10.9 Counterparts; Facsimile Signature. This Agreement may be executed in any number of counterparts and by facsimile signature. All of such counterparts taken together shall for all purposes constitute one agreement binding upon all of the parties.

10.10 Headings. The headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

[Signature Page Follows]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered on and as of the day and year first above written.

HOSPICE ANGELIC CARE, INC

By: ______________________

Name: Melanie Hayes
Title: Director/Owner

CARING HOSPICE OF MICHIGAN, LLC

By: ______________________

Name: Randolph L. Brown
Title: COO

## Schedule 1.1

Personal Property

- Desktop computers ***(TO CONFIRM)***
- Laptop computers ***(TO CONFIRM)***
- [***Other equipment & supplies as the parties may agree***]

# ESCROW AGREEMENT

**THIS ESCROW AGREEMENT** ("Agreement"), dated as of this 3RD day of August 2015, is made and entered into by and between Caring Hospice Services of Michigan LLC, a Michigan limited liability company ("Buyer") and REED SMITH LLP, a Pennsylvania limited liability company (the "Escrow Agent").

## RECITALS

WHEREAS, Hospice Angelic Care, Inc., a Michigan nonstock corporation ("Seller"), and Buyer intend to enter into an Asset Purchase Agreement (the "Purchase Agreement"), pursuant to which Seller agrees to sell, and Buyer agrees to purchase certain assets of Seller (the "Assets"); and

WHEREAS, pursuant to Section 2.2 of the Purchase Agreement, upon execution of the Purchase Agreement, Buyer agrees to deposit Fourteen Thousand Two-Hundred Fifty Dollars ($14,250.00) in an escrow account; and

WHEREAS, the parties to said Purchase Agreement agree that Reed Smith LLP shall act as dispersing agent of such funds, and shall maintain the Escrow Account (as hereinafter defined).

NOW, THEREFORE, in consideration of the mutual undertakings and covenants contained in this Agreement, and intending to be legally bound hereby, the parties hereto covenant and agree as follows:

**1.** **Appointment of Escrow Agent; Receipt of Escrowed Funds**. Buyer hereby appoints and designates Reed Smith LLP as the Escrow Agent hereunder. By its execution of this Agreement, the Escrow Agent hereby acknowledges its receipt from Buyer of Fourteen Thousand Two-Hundred Fifty Dollars ($14,250.00) in immediately available funds (the "Escrowed Funds"). The Escrowed Funds shall be deposited by the Escrow Agent in a non-interest bearing escrow account designated as the "Escrow Account."

**2.** **Disbursement of Escrowed Funds**.

(a) Upon the Closing on the purchase and sale of the Assets (the "Closing"), the Escrow Agent shall disburse the Escrowed Funds to Seller or its designee.

(c) Upon the distribution of the full amount of the Escrowed Funds, this Agreement shall terminate and the Escrow Agent shall be discharged of any further liability.

(d) All disbursements made to Seller under this Section 2 shall be made by check or wire transfer to such account or accounts as are designated in writing by Seller.

**4.** **Authority of Buyer, Seller and Escrow Agent**. Buyer, Seller and Escrow Agent hereby represent, warrant and covenant to one another as follows:

(a) Its execution and delivery of this Agreement has been duly authorized by all necessary corporate action on its part; and

(b) This Agreement has been duly executed and delivered by it.

5. **Exculpation of Escrow Agent**. The Escrow Agent shall have no duties or responsibilities except for those set forth herein (and required by applicable law), which the parties agree are solely ministerial in nature. Except for the Escrow Agent's own willful misconduct or gross negligence: (a) the Escrow Agent shall have no liability of any kind whatsoever for the performance of any duties imposed upon the Escrow Agent under this Agreement or for any action or failure to act by the Escrow Agent hereunder; (b) the Escrow Agent shall not be responsible for the acts or omissions of any other parties hereto; (c) the Escrow Agent shall not be liable to anyone for damages, losses or expenses arising out of this Agreement; and (d) provided that the Escrowed Funds are invested as directed, the Escrow Agent shall have no responsibility for the rate or amount of interest, if any, earned on the Escrow Funds or for the preservation of the principal of the Escrow Funds. Notwithstanding the foregoing, the Escrow Agent shall act only upon the written instructions of Buyer. In the event of any dispute between Buyer and Seller relating to the Purchase Agreement, Escrow Agent shall have no liability of any kind, nor any duty or responsibility except to produce documentation as to how the Escrowed Funds have been disbursed and any remaining funds.

6. **Indemnification**. In consideration of its acceptance of the appointment as the Escrow Agent, the other parties hereto, jointly and severally, agree to indemnify and hold the Escrow Agent harmless as to any liability incurred by it to any person, firm or corporation by reason of its having accepted the same or in carrying out any of the terms hereof, and to reimburse the Escrow Agent for all its reasonable expenses, including, among other things, counsel fees and court costs, incurred by reason of its position hereunder or actions taken pursuant hereto.

7. **No Additional Duties**. The Escrow Agent shall have no duties except those which are expressly set forth herein, and it shall not be bound by any notice of a claim for payment, or demand with respect thereto.

8. **Modification**. No modification, amendment, termination or rescission of this Agreement shall be valid unless the same is in writing and signed by Buyer, Seller and the Escrow Agent.

9. **Resignation of the Escrow Agent**. The Escrow Agent, and any successor Escrow Agent, may resign at any time as Escrow Agent hereunder by giving at least thirty (30) days written notice to Buyer and Seller. Upon such resignation and the appointment of a successor Escrow Agent, the resigning Escrow Agent shall be absolved from any further liability in connection with the exercise of its powers and duties as Escrow Agent hereunder. Upon their receipt of notice of resignation from the Escrow Agent, Buyer and Seller shall use their best efforts jointly to designate a successor Escrow Agent. In the event Buyer and Seller do not agree

upon a successor Escrow Agent within thirty (30) days after the receipt by Buyer and Seller of such notice, the Escrow Agent seeking to resign may petition any court of competent jurisdiction for the appointment of a successor Escrow Agent or other appropriate relief and any such resulting appointment shall be binding upon all parties hereto. By mutual agreement, Buyer and Seller shall have the right at any time upon not less than seven (7) days written notice to terminate their appointment of the Escrow Agent, or successor Escrow Agent, as Escrow Agent. The Escrow Agent or successor Escrow Agent shall continue to act as Escrow Agent until a successor is appointed and qualified to act as Escrow Agent.

**10.** __**Miscellaneous**__. The Escrow Agent may execute any of its powers or responsibilities hereunder and exercise any rights hereunder either directly or by or through its agents or attorneys. Nothing in this Agreement shall be deemed to impose upon the Escrow Agent any duty to qualify to do business or to act as fiduciary or otherwise in any jurisdiction. The Escrow Agent shall not be responsible for and shall not be under a duty to examine or pass upon the validity, binding effect, execution or sufficiency of this Agreement or of any agreement amendatory or supplemental hereto.

**11.** __**Counterparts; Electronic Signatures**__. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Signatures delivered by facsimile or other electronic means shall have the same legal effect as original signatures.

**12.** __**Notices**__. Any notice, demand or request required or permitted to be given under the provisions of this Agreement shall be in writing and shall be deemed to have been duly given on the earlier of (a) the date actually received by the party in question, by whatever means and however addressed, or (b) the date sent if sent by confirmed telecopy, or on the date of personal delivery if delivered by hand, or on the date signed for if sent by a prepaid overnight delivery service, to the following addresses:

| | |
|---|---|
| If to Seller: | Melanie Hayes<br>Hospice Angelic Care, LLC<br>430 W M-55<br>Tawas City, MI 48763 |
| If to Buyer: | Mr. David Rosenbaum<br>Caring Hospice Services, LLC<br>525 RT 70 West, Suite B15<br>Lakewood, NJ 08701<br>Fax: (732) 905-4929 |
| If to Escrow Agent | Reed Smith LLP<br>1301 K Street, N.W.<br>Suite 1000 - East Tower |

Washington, D.C. 20005
Telephone: (202) 414-9229
Telecopy: (202) 414-9299
Attention: Catherine A. Hurley, Esq.

13. **Applicable Law**. This Agreement shall be construed in accordance with and governed by the laws of the State of Delaware, without reference to the conflict of law provisions thereof.

14. **Entire Agreement; Binding Effect**. This Agreement contains the entire understanding of the parties with respect to the Escrowed Funds and disbursements of the Escrowed Funds. This Agreement may be modified only by a written agreement executed by all of the parties. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns except that no party may assign any of its rights or delegate any of its obligations hereunder without the prior written consent of the other parties. Any assignment or delegation in contravention of this provision shall be void.

15. **Time of the Essence**. Time is of the essence in the parties' performance of each of their respective obligations under this Agreement.

**[SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

**Seller:** **HOSPICE ANGELIC CARE, INC.**

By: ______________________________
Name:
Title:

**BUYER:** **CARING HOSPICE SERVICES OF MICHIGAN, LLC**

By: ______________________________
Name: DAVID ROSENBAUM
Title: PRESIDENT/CEO

**ESCROW AGENT:** **REED SMITH, LLP**

By: ______________________________
Name:
Title:

# ESCROW AGREEMENT

**THIS ESCROW AGREEMENT** ("Agreement"), dated as of this 3RD day of August 2015, is made and entered into by and between Caring Hospice Services of Michigan LLC, a Michigan limited liability company ("Buyer") and REED SMITH LLP, a Pennsylvania limited liability company (the "Escrow Agent").

## RECITALS

WHEREAS, Hospice Angelic Care, Inc., a Michigan nonstock corporation ("Seller"), and Buyer intend to enter into an Asset Purchase Agreement (the "Purchase Agreement"), pursuant to which Seller agrees to sell, and Buyer agrees to purchase certain assets of Seller (the "Assets"); and

WHEREAS, pursuant to Section 2.2 of the Purchase Agreement, upon execution of the Purchase Agreement, Buyer agrees to deposit Fourteen Thousand Two-Hundred Fifty Dollars ($14,250.00) in an escrow account; and

WHEREAS, the parties to said Purchase Agreement agree that Reed Smith LLP shall act as dispersing agent of such funds, and shall maintain the Escrow Account (as hereinafter defined).

NOW, THEREFORE, in consideration of the mutual undertakings and covenants contained in this Agreement, and intending to be legally bound hereby, the parties hereto covenant and agree as follows:

1. **Appointment of Escrow Agent; Receipt of Escrowed Funds**. Buyer hereby appoints and designates Reed Smith LLP as the Escrow Agent hereunder. By its execution of this Agreement, the Escrow Agent hereby acknowledges its receipt from Buyer of Fourteen Thousand Two-Hundred Fifty Dollars ($14,250.00) in immediately available funds (the "Escrowed Funds"). The Escrowed Funds shall be deposited by the Escrow Agent in a non-interest bearing escrow account designated as the "Escrow Account."

2. **Disbursement of Escrowed Funds**.

(a) Upon the Closing on the purchase and sale of the Assets (the "Closing"), the Escrow Agent shall disburse the Escrowed Funds to Seller or its designee.

(c) Upon the distribution of the full amount of the Escrowed Funds, this Agreement shall terminate and the Escrow Agent shall be discharged of any further liability.

(d) All disbursements made to Seller under this Section 2 shall be made by check or wire transfer to such account or accounts as are designated in writing by Seller.

4. **Authority of Buyer, Seller and Escrow Agent**. Buyer, Seller and Escrow Agent hereby represent, warrant and covenant to one another as follows:

(a) Its execution and delivery of this Agreement has been duly authorized by all necessary corporate action on its part; and

(b) This Agreement has been duly executed and delivered by it.

5. **Exculpation of Escrow Agent**. The Escrow Agent shall have no duties or responsibilities except for those set forth herein (and required by applicable law), which the parties agree are solely ministerial in nature. Except for the Escrow Agent's own willful misconduct or gross negligence: (a) the Escrow Agent shall have no liability of any kind whatsoever for the performance of any duties imposed upon the Escrow Agent under this Agreement or for any action or failure to act by the Escrow Agent hereunder; (b) the Escrow Agent shall not be responsible for the acts or omissions of any other parties hereto; (c) the Escrow Agent shall not be liable to anyone for damages, losses or expenses arising out of this Agreement; and (d) provided that the Escrowed Funds are invested as directed, the Escrow Agent shall have no responsibility for the rate or amount of interest, if any, earned on the Escrow Funds or for the preservation of the principal of the Escrow Funds. Notwithstanding the foregoing, the Escrow Agent shall act only upon the written instructions of Buyer. In the event of any dispute between Buyer and Seller relating to the Purchase Agreement, Escrow Agent shall have no liability of any kind, nor any duty or responsibility except to produce documentation as to how the Escrowed Funds have been disbursed and any remaining funds.

6. **Indemnification**. In consideration of its acceptance of the appointment as the Escrow Agent, the other parties hereto, jointly and severally, agree to indemnify and hold the Escrow Agent harmless as to any liability incurred by it to any person, firm or corporation by reason of its having accepted the same or in carrying out any of the terms hereof, and to reimburse the Escrow Agent for all its reasonable expenses, including, among other things, counsel fees and court costs, incurred by reason of its position hereunder or actions taken pursuant hereto.

7. **No Additional Duties**. The Escrow Agent shall have no duties except those which are expressly set forth herein, and it shall not be bound by any notice of a claim for payment, or demand with respect thereto.

8. **Modification**. No modification, amendment, termination or rescission of this Agreement shall be valid unless the same is in writing and signed by Buyer, Seller and the Escrow Agent.

9. **Resignation of the Escrow Agent**. The Escrow Agent, and any successor Escrow Agent, may resign at any time as Escrow Agent hereunder by giving at least thirty (30) days written notice to Buyer and Seller. Upon such resignation and the appointment of a successor Escrow Agent, the resigning Escrow Agent shall be absolved from any further liability in connection with the exercise of its powers and duties as Escrow Agent hereunder. Upon their receipt of notice of resignation from the Escrow Agent, Buyer and Seller shall use their best efforts jointly to designate a successor Escrow Agent. In the event Buyer and Seller do not agree

upon a successor Escrow Agent within thirty (30) days after the receipt by Buyer and Seller of such notice, the Escrow Agent seeking to resign may petition any court of competent jurisdiction for the appointment of a successor Escrow Agent or other appropriate relief and any such resulting appointment shall be binding upon all parties hereto. By mutual agreement, Buyer and Seller shall have the right at any time upon not less than seven (7) days written notice to terminate their appointment of the Escrow Agent, or successor Escrow Agent, as Escrow Agent. The Escrow Agent or successor Escrow Agent shall continue to act as Escrow Agent until a successor is appointed and qualified to act as Escrow Agent.

**10.** **Miscellaneous**. The Escrow Agent may execute any of its powers or responsibilities hereunder and exercise any rights hereunder either directly or by or through its agents or attorneys. Nothing in this Agreement shall be deemed to impose upon the Escrow Agent any duty to qualify to do business or to act as fiduciary or otherwise in any jurisdiction. The Escrow Agent shall not be responsible for and shall not be under a duty to examine or pass upon the validity, binding effect, execution or sufficiency of this Agreement or of any agreement amendatory or supplemental hereto.

**11.** **Counterparts; Electronic Signatures**. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Signatures delivered by facsimile or other electronic means shall have the same legal effect as original signatures.

**12.** **Notices**. Any notice, demand or request required or permitted to be given under the provisions of this Agreement shall be in writing and shall be deemed to have been duly given on the earlier of (a) the date actually received by the party in question, by whatever means and however addressed, or (b) the date sent if sent by confirmed telecopy, or on the date of personal delivery if delivered by hand, or on the date signed for if sent by a prepaid overnight delivery service, to the following addresses:

| | |
|---|---|
| If to Seller: | Melanie Hayes<br>Hospice Angelic Care, LLC<br>430 W M-55<br>Tawas City, MI 48763 |
| If to Buyer: | Mr. David Rosenbaum<br>Caring Hospice Services, LLC<br>525 RT 70 West, Suite B15<br>Lakewood, NJ 08701<br>Fax: (732) 905-4929 |
| If to Escrow Agent | Reed Smith LLP<br>1301 K Street, N.W.<br>Suite 1000 - East Tower |

Washington, D.C. 20005
Telephone: (202) 414-9229
Telecopy: (202) 414-9299
Attention: Catherine A. Hurley, Esq.

**13.** **Applicable Law**. This Agreement shall be construed in accordance with and governed by the laws of the State of Delaware, without reference to the conflict of law provisions thereof.

**14.** **Entire Agreement; Binding Effect**. This Agreement contains the entire understanding of the parties with respect to the Escrowed Funds and disbursements of the Escrowed Funds. This Agreement may be modified only by a written agreement executed by all of the parties. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns except that no party may assign any of its rights or delegate any of its obligations hereunder without the prior written consent of the other parties. Any assignment or delegation in contravention of this provision shall be void.

**15.** **Time of the Essence**. Time is of the essence in the parties' performance of each of their respective obligations under this Agreement.

**[SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

**Seller:** **HOSPICE ANGELIC CARE, INC.**

By: ______________________________
Name:
Title:

**BUYER:** **CARING HOSPICE SERVICES OF MICHIGAN, LLC**

By: [signature]
Name: DAVID ROSENBAUM
Title: PRESIDENT/CEO

**ESCROW AGENT:** **REED SMITH, LLP**

By: ______________________________
Name:
Title:

**AMENDED AND RESTATED ESCROW AGREEMENT**

**THIS AMENDED AND RESTATED ESCROW AGREEMENT** ("Agreement"), dated as of this ——12th day of November 2015, is made and entered into by and between CARING HOSPICE ~~SERVICES~~ OF MICHIGAN, LLC, a Michigan limited liability company ("Buyer"), HOSPICE ANGELIC CARE, INC., a Michigan corporation, and REED SMITH LLP, a Pennsylvania limited liability partnership (the "Escrow Agent").

**RECITALS**

WHEREAS, Seller and Buyer entered into an Asset Purchase Agreement (the "Purchase Agreement") dated ~~August 19,~~as of October 31, 2015, ~~as~~and amended November ——12th, 2015, pursuant to which Seller agreed to sell, and Buyer agreed to purchase certain assets of Seller (the "Assets") for a purchase price of Two Hundred Eighty Five Thousand and No/100 Dollars ($285,000.00) (the "Purchase Price"); and

WHEREAS, Seller, Buyer, and Escrow Agent entered into an Escrow Agreement dated as of August 3, 2015.

WHEREAS, pursuant to Section 2.2 of the Purchase Agreement as amended, upon execution of the Purchase Agreement, Buyer agreed to deposit Fourteen Thousand Two-Hundred Fifty Dollars ($14,250.00) in an escrow account and Buyer agrees at Closing (as defined in the Purchase Agreement), to deposit the remainder of the Purchase Price in an escrow account held by Reed Smith LLP, as Escrow Agent; and

WHEREAS, the parties to said Purchase Agreement, as amended agree that Reed Smith LLP shall act as escrow agent, and shall maintain the Escrow Account (as hereinafter defined) and hold in escrow the original Bill of Sale.

NOW, THEREFORE, in consideration of the mutual undertakings and covenants contained in this Agreement, and intending to be legally bound hereby, the parties therefore amend and restate the Escrow Agreement to read in its entirety as follows:

1. **Appointment of Escrow Agent; Receipt of Escrow**. Buyer and Seller hereby appoint and designate Reed Smith LLP as the Escrow Agent hereunder. By its execution of this Agreement, the Escrow Agent hereby acknowledges its receipt from Buyer of Two Hundred Eighty Five Thousand and No/100 Dollars ($285,000.00) in immediately available funds and receipt from the Seller of the original Bill of Sale. The Purchase Price shall be deposited by the Escrow Agent in a non-interest bearing escrow account designated as the "Escrow Account."

2. **Disbursement of Escrowed**.

(a) On the date that is three (3) business days after the date on Escrow Agent receives written notice from Buyer that the last of the conditions set forth in Section 7 of the Purchase Agreement are satisfied or waived, the Escrow Agent shall release or cause to be released the Purchase Price to Seller, which shall be paid to Seller in full via check or wire transfer to such account or accounts as are designated in writing by Seller, and Escrow Agent shall release the originally executed Bill of Sale to Buyer.

(b) Notwithstanding the foregoing if the conditions set forth in Section 2(a) above for release of the escrow have not occurred within ~~four~~six (~~4~~6) months of the Closing Date, the Purchase Agreement shall terminate and the Escrow Agent shall return the Purchase Price to the Buyer and shall return the originally executed Bill of Sale to the Seller.

(c) Upon the distribution of the full amount of the Purchase Price and release of the original Bill of Sale, this Agreement shall terminate and the Escrow Agent shall be discharged of any further liability.

3. **Authority of Buyer, Seller and Escrow Agent**. Buyer, Seller and Escrow Agent hereby represent, warrant and covenant to one another as follows:

(a) Its execution and delivery of this Agreement has been duly authorized by all necessary corporate action on its part; and

(b) This Agreement has been duly executed and delivered by it.

4. **Exculpation of Escrow Agent**. The Escrow Agent shall have no duties or responsibilities except for those set forth herein (and required by applicable law), which the parties agree are solely ministerial in nature. Except for the Escrow Agent's own willful misconduct or gross negligence: (a) the Escrow Agent shall have no liability of any kind whatsoever for the performance of any duties imposed upon the Escrow Agent under this Agreement or for any action or failure to act by the Escrow Agent hereunder; (b) the Escrow Agent shall not be responsible for the acts or omissions of any other parties hereto; (c) the Escrow Agent shall not be liable to anyone for damages, losses or expenses arising out of this Agreement; and (d) the Escrow Agent shall have no responsibility for the rate or amount of interest, if any, earned on the Escrow Funds or for the preservation of the principal of the Escrow Funds. Notwithstanding the foregoing, the Escrow Agent shall act only upon the written instructions of Buyer. In the event of any dispute between Buyer and Seller relating to the Purchase Agreement or this Agreement, Escrow Agent shall have no liability of any kind, nor any duty or responsibility except to produce documentation as to how the Escrowed Funds have been disbursed and any remaining funds.

5. **Indemnification**. In consideration of its acceptance of the appointment as the Escrow Agent, the other parties hereto, jointly and severally, agree to indemnify and hold the Escrow Agent harmless as to any liability incurred by it to any person, firm or corporation by

Escrow Agent harmless as to any liability incurred by it to any person, firm or corporation by reason of its having accepted the same or in carrying out any of the terms hereof, and to reimburse the Escrow Agent for all its reasonable expenses, including, among other things, counsel fees and court costs, incurred by reason of its position hereunder or actions taken pursuant hereto.

6. **Conflict of Interest**. The parties hereto acknowledge that the Escrow Agent has served as counsel to Buyer, with respect to the Agreement and the transactions contemplated thereby and hereby, and that the Escrow Agent may continue to so serve as counsel to Buyer, following the consummation of such transactions. The parties hereto hereby agree that no conflict of interest shall exist as a consequence of the Escrow Agent serving as Escrow Agent hereunder and also serving as counsel to Buyer any time hereafter. The parties hereto hereby waive any claim with respect to any actual or potential conflict of interest, or of any breach of any alleged fiduciary or similar duty, arising from or regarding any action or inaction by the Escrow Agent, as the escrow agent hereunder, regardless of any relationship, now or in the future, between any party hereto and the Escrow Agent as counsel for such party or any other party hereto.

7. **Controversies.** If any controversy arises between or among any of the parties to this Agreement, or with any other party, concerning the subject matter of this Agreement, its terms or conditions or the disbursement or distribution of any funds, documents or other property held in escrow hereunder, the Escrow Agent will not be required to determine the controversy or to take any action regarding it. The Escrow Agent may hold all funds, documents and other property delivered to it and/or placed in escrow hereunder and may wait for settlement of any such controversy by final arbitration or other determination. In such event, the Escrow Agent will not be liable for any interest or other damage or loss. The Escrow Agent is further authorized to deposit with any court all funds, documents and other property held in escrow or otherwise delivered to it hereunder. The parties hereto jointly and severally agree to indemnify and hold harmless the Escrow Agent from and against any and all costs, expenses, charges and reasonable attorneys' fees incurred by the Escrow Agent due or related to any arbitration, deposit or other proceeding contemplated by the foregoing including any action with respect to such deposit. Upon initiating such arbitration or any other proceeding, the Escrow Agent shall be fully released and discharged of and from all obligations and liabilities imposed by the terms of this Agreement or otherwise imposed by law.

8. **No Additional Duties**. The Escrow Agent shall have no duties except those which are expressly set forth herein, and it shall not be bound by any notice of a claim for payment, or demand with respect thereto.

9. **Modification**. No modification, amendment, termination or recission of this Agreement shall be valid unless the same is in writing and signed by Buyer, Seller and the Escrow Agent.

10. **Resignation of the Escrow Agent**. The Escrow Agent, and any successor Escrow Agent, may resign at any time as Escrow Agent hereunder by giving at least thirty (30) days written notice to Buyer and Seller. Upon such resignation and the appointment of a successor Escrow Agent, the resigning Escrow Agent shall be absolved from any further liability in connection with the exercise of its powers and duties as Escrow Agent hereunder. Upon their receipt of notice of resignation from the Escrow Agent, Buyer and Seller shall use their best efforts jointly to designate a successor Escrow Agent. In the event Buyer and Seller do not agree upon a successor Escrow Agent within thirty (30) days after the receipt by Buyer and Seller of such notice, the Escrow Agent seeking to resign may petition any court of competent jurisdiction for the appointment of a successor Escrow Agent or other appropriate relief and any such resulting appointment shall be binding upon all parties hereto. By mutual agreement, Buyer and Seller shall have the right at any time upon not less than seven (7) days written notice to terminate their appointment of the Escrow Agent, or successor Escrow Agent, as Escrow Agent. The Escrow Agent or successor Escrow Agent shall continue to act as Escrow Agent until a successor is appointed and qualified to act as Escrow Agent.

11. **Miscellaneous**. The Escrow Agent may execute any of its powers or responsibilities hereunder and exercise any rights hereunder either directly or by or through its agents or attorneys. Nothing in this Agreement shall be deemed to impose upon the Escrow Agent any duty to qualify to do business or to act as fiduciary or otherwise in any jurisdiction. The Escrow Agent shall not be responsible for and shall not be under a duty to examine or pass upon the validity, binding effect, execution or sufficiency of this Agreement or of any agreement amendatory or supplemental hereto.

12. **Counterparts; Electronic Signatures**. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Signatures delivered by facsimile or other electronic means shall have the same legal effect as original signatures.

13. **Notices**. Any notice, demand or request required or permitted to be given under the provisions of this Agreement shall be in writing and shall be deemed to have been duly given on the earlier of (a) the date actually received by the party in question, by whatever means and however addressed, or (b) the date sent if sent by confirmed telecopy, or on the date of personal delivery if delivered by hand, or on the date signed for if sent by a prepaid overnight delivery service, to the following addresses:

| | |
|---|---|
| If to Seller: | Melanie Hayes<br>Hospice Angelic Care, LLC<br>314 W. M-55<br>Tawas City, MI 48763 |
| If to Buyer: | Mr. David Rosenbaum<br>Caring Hospice of Michigan LLC<br>525 RT 70 West, Suite B15 |

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

**Seller:**

**HOSPICE ANGELIC CARE, INC.**, a Michigan corporation

By: Mella Haye
Name:
Title: Director/Owner

**BUYER:**

**CARING SERVICES OF MICHIGAN, LLC,** a Michigan limited liability company

By: ______________________
Name:
Title:

**ESCROW AGENT:**

**REED SMITH, LLP,** a Pennsylvania limited liability partnership

By: ______________________
Name:
Title:

Lakewood, NJ 08701
Fax: (732) 905-4929

If to Escrow Agent

Reed Smith LLP
1301 K Street, N.W.
Suite 1000 - East Tower
Washington, D.C. 20005
Telephone: (202) 414-9229
Telecopy: (202) 414-9299
Attention: Catherine A. Hurley, Esq.

**14.** **Applicable Law**. This Agreement shall be construed in accordance with and governed by the laws of the State of Delaware, without reference to the conflict of law provisions thereof.

**15.** **Entire Agreement; Binding Effect**. This Agreement contains the entire understanding of the parties with respect to the Escrowed Funds and disbursements of the Escrowed Funds. This Agreement may be modified only by a written agreement executed by all of the parties. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns except that no party may assign any of its rights or delegate any of its obligations hereunder without the prior written consent of the other parties. Any assignment or delegation in contravention of this provision shall be void.

**16.** **Time of the Essence**. Time is of the essence in the parties' performance of each of their respective obligations under this Agreement.

**[SIGNATURE PAGE FOLLOWS]**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered on and as of the day and year first above written.

HOSPICE ANGELIC CARE, INC.

By: ______________________________
Name: Melanie Hayes
Title: Director/Owner

CARING HOSPICE ~~SERVICES~~ OF MICHIGAN, LLC

By: ______________________________
Name: David Rosenbaum
Title: Member

**EXHIBIT A**

**BILL OF SALE AND ASSIGNMENT AGREEMENT**

THIS BILL OF SALE AND ASSIGNMENT AGREEMENT is delivered as of this ——12th day of ————————November, 2015 to **CARING HOSPICE ~~SERVICES~~ OF MICHIGAN, LLC**, a Michigan limited liability company ("Grantee"), by **HOSPICE ANGELIC CARE, INC.**, a Michigan Corporation ("Grantor").

WHEREAS, Grantee and Grantor are the parties to a certain Asset Purchase Agreement dated as of ~~August 19,~~October 31, 2015 and amended as of November ——,12, 2015 (the "Agreement"), pursuant to which Grantor shall sell, transfer, convey, assign and deliver to Grantee the Assets (as defined in the Agreement) subject to the terms and conditions set forth in the Agreement.

NOW, THEREFORE, for and in consideration of the mutual covenants and agreements contained in the Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor hereby irrevocably sells, transfers, conveys, assigns and delivers to Grantee, its successors and assigns forever, Grantor's right, title and interest in, to and under the Assets, including without limitation, Grantor's hospice Medicare provider agreement, including Provider Transaction Access Number 23-2614.

This Bill of Sale and Assignment Agreement is being delivered subject to and pursuant to the terms and conditions of the Agreement. This Bill of Sale and Assignment Agreement shall be governed by and construed in accordance with the internal laws of the State of Michigan without giving effect to its conflicts of law principles.

IN WITNESS WHEREOF, the undersigned have executed and delivered this Bill of Sale and Assignment Agreement as of the day and year first above written.

**Grantor:**
HOSPICE ANGELIC CARE, INC.

By: [signature]
Name: Melanie Hayes
Title: Director/Owner

**Caring Hospice Services**
**525 Route 70 West, Suite B-15**
**Lakewood, NJ 08701**
**732-901-6600 / 732-905-4929 FAX**

August 3, 2015

State of Michigan
Department of Community Health
Capitol View Building
201 Townsend Street
Lansing, Michigan 48913

To Whom It May Concern:

We are writing to inform you that Hospice Angelic Care, Inc. has received an offer to purchase its assets from Caring Hospice Services, LLC and subject to a mutually satisfactory agreement with Caring Hospice, it will be transferring its assets, including its license and Medicare provider number to Caring Hospice within approximately thirty to sixty days. Caring Hospice will be taking over responsibility for Hospice Angelic Care's records as part of our agreement.

Caring Hospice was established as a hospice provider in 1997 and maintains operations in Connecticut, New York, New Jersey, Pennsylvania and Ohio. It provides a comprehensive range of hospice services including, but not limited to, assistance with daily living, nursing care, pain and symptom management and other comfort care, psychosocial services and bereavement services. Caring Hospice takes an interdisciplinary approach to meet the individual needs of each patient and has cared for well over 40,000 patients since its inception.

Pursuant to Section 20142(3) of the Public Health Code we are notifying you of our intent.

If you have any questions, please feel free to contact either party.

Sincerely,
Caring Hospice Services, LLC

Randolph L. Brown
COO
215-669-5769

Sincerely,
Hospice Angelic Care, Inc.

Mélanie Hayes
Director
989-362-6600

## SECTION 1: BASIC INFORMATION (Continued)

A. Check one box and complete the required sections

| REASON FOR APPLICATION | BILLING NUMBER INFORMATION | REQUIRED SECTIONS |
|---|---|---|
| ☐ You are a new enrollee in Medicare | Enter your Medicare Identification Number (if issued) and the NPI you would like to link to this number in Section 4. | Complete all applicable sections except 2F, 2G, and 2H |
| ☐ You are enrolling with another fee-for-service contractor's jurisdiction<br>☐ You are reactivating your Medicare enrollment | Enter your Medicare Identification Number (if issued) and the NPI you would like to link to this number in Section 4. | Complete all applicable sections except 2F, 2G, and 2H |
| ☐ You are voluntarily terminating your Medicare enrollment | Effective Date of Termination:<br>Medicare Identification Number(s) to Terminate (if issued):<br>National Provider Identifier (if issued): | Complete sections: 1, 2B1, 13, and either 15 or 16 |
| ☒ There has been a Change of Ownership (CHOW) of the Medicare-enrolled provider<br>You are the:<br>☒ Seller/Former Owner<br>☐ Buyer/New Owner | Tax Identification Number:<br>26-4384146 | Seller/Former Owner: 1A, 2F, 13, and either 15 or 16<br>Buyer/New Owner: Complete all sections except 2G and 2H |
| ☐ Your organization has taken part in an Acquisition or Merger<br>You are the:<br>☐ Seller/Former Owner<br>☐ Buyer/New Owner | Medicare Identification Number of the Seller/Former Owner (if issued):<br>NPI:<br>Tax Identification Number: | Seller/Former Owner: 1A, 2G, 13, and either 15 or 16<br>Buyer/New Owner: 1A, 2G, 4, 13, and either 15 (if you are the authorized official) or 16 (if you are the delegated official), and 16 for the signer if that authorized or delegated official has not been established for this provider. |

## SECTION 2: IDENTIFYING INFORMATION (Continued)

F. Change of Ownership (CHOW) Information

Both the seller/former owner and the new owner should complete this section. (As the new owner may not know all of the seller/former owner's data, it should furnish this information on an "if known" basis.) The seller/former owner must complete Sections 1A, 2F, 13, and either 15 or 16. (Section 6 must also be completed if the signer has never completed Section 6 before.) The new owner must complete the entire application.

| Legal Business Name of "Seller/Former Owner" as reported to the Internal Revenue Service | | |
|---|---|---|
| Hospice Angelic Care Inc. | | |
| "Doing Business As" Name of Seller/Former Owner (if applicable) | Old Owner's Medicare Identification Number (if issued): 23-1614 | |
| Old Owner's NPI: 110 405 8783 | Effective Date of Transfer (this can be a future date) (mm/dd/yyyy): 10-31-2015 | Name of Fee-For-Service Contractor of Seller/Former Owner |

Will the new owner be accepting assignment of the current "Provider Agreement?" ☒ YES ☐ NO

If the answer is "No," then this is an initial enrollment and the new owner should follow the instructions for "New Enrollees" in Section 1 of this form.

Submit one copy of the bill of sale with the application. A copy of the final sales agreement must be submitted once the sale is executed.

G. Acquisitions/Mergers

Effective Date of Acquisition (mm/dd/yyyy)

The seller/former owner need only complete Sections 1A, 2G, 13, and either 15 or 16; the new owner must complete Sections 1A, 2G, 4, 13, and either 15 or 16. (Section 6 must also be completed if the signer has never completed Section 6 before.)

### 1. PROVIDER BEING ACQUIRED

This section is to be completed with information about the currently enrolled provider that is being acquired and will no longer retain its current Medicare provider number as a result of this acquisition.

Legal Business Name of the "Provider Being Acquired" as reported to the Internal Revenue Service

Current Fee-for-Service Contractor

Provide the name and Medicare identification number of all units of the above provider that have separate Medicare identification numbers but have not entered into separate provider agreements, such as swing bed units of a hospital and HHA branches. Also furnish the NPI. Units that already have a separate provider agreement should not be reported here.

| NAME/DEPARTMENT | MEDICARE IDENTIFICATION NUMBER (IF ISSUED) | NATIONAL PROVIDER IDENTIFIER |
|---|---|---|
| | | |
| | | |
| | | |

## SECTION 13: CONTACT PERSON ☐

If questions arise during the processing of this application, the fee-for-service contractor will contact the individual shown below. If the contact person is an authorized or delegated official, check the appropriate box below and skip to the section indicated.

☐ Contact an Authorized Official listed in Section 15

☐ Contact a Delegated Official listed in Section 16

| First Name | Middle Initial | Last Name | Jr., Sr., etc. |
|---|---|---|---|
| Melanie | R | Hayes | |

| Telephone Number | Fax Number (if applicable) |
|---|---|
| 989-362-6600 | 989.362.6605 |

Address Line 1 (Street Name and Number)
314 W. M-55

Address Line 2 (Suite, Room, etc.)

| City/Town | State | ZIP Code + 4 |
|---|---|---|
| Tawas | MI | 48763 |

E-mail Address
hospiceangeliccare@yahoo.com

## SECTION 15: CERTIFICATION STATEMENT (Continued)

B. 1ST Authorized Official Signature

I have read the contents of this application. My signature legally and financially binds this provider to the laws, regulations, and program instructions of the Medicare program. By my signature, I certify that the information contained herein is true, correct, and complete, and I authorize the Medicare fee-for-service contractor to verify this information. If I become aware that any information in this application is not true, correct, or complete, I agree to notify the Medicare fee-for-service contractor of this fact in accordance with the time frames established in 42 C.F.R. § 424.516(e).

If you are changing, adding, or deleting information, check the applicable box, furnish the effective date, and complete the appropriate fields in this section.

| CHECK ONE | ☐ CHANGE | ☐ ADD | ☐ DELETE |
|---|---|---|---|
| DATE (mm/dd/yyyy) | | | |

Authorized Official's Information and Signature

| First Name | Middle Initial | Last Name | Suffix (e.g., Jr., Sr.) |
|---|---|---|---|
| Melanie | R | Hayes | |

| Telephone Number | Title/Position |
|---|---|
| 989-362-6600 | Director/Owner |
| **Authorized Official Signature (First, Middle, Last Name, Jr., Sr., M.D., D.O., etc.)** | **Date Signed (mm/dd/yyyy)** |
| Melanie R. Hayes | 9/7/2015 |

C. 2ND Authorized Official Signature

I have read the contents of this application. My signature legally and financially binds this provider to the laws, regulations, and program instructions of the Medicare program. By my signature, I certify that the information contained herein is true, correct, and complete, and I authorize the Medicare fee-for-service contractor to verify this information. If I become aware that any information in this application is not true, correct, or complete, I agree to notify the Medicare fee-for-service contractor of this fact in accordance with the time frames established in 42 C.F.R. § 424.516(e).

If you are changing, adding, or deleting information, check the applicable box, furnish the effective date, and complete the appropriate fields in this section.

| CHECK ONE | ☐ CHANGE | ☐ ADD | ☐ DELETE |
|---|---|---|---|
| DATE (mm/dd/yyyy) | | | |

Authorized Official's Information and Signature

| First Name | Middle Initial | Last Name | Suffix (e.g., Jr., Sr.) |
|---|---|---|---|
| | | | |

| Telephone Number | Title/Position |
|---|---|
| | |
| **Authorized Official Signature (First, Middle, Last Name, Jr., Sr., M.D., D.O., etc.)** | **Date Signed (mm/dd/yyyy)** |
| | |

All signatures must be original and signed in ink. Applications with signatures deemed not original will not be processed. Stamped, faxed or copied signatures will not be accepted.

National Government Services.

MEDICARE

Provider Enrollment Part A, PO Box 6474, Indianapolis, IN 46206-6474

October 14, 2015

Hospice Angelic Care Inc.
Attention: Melanie Hayes
314 W. M-55
Tawas, MI 48763-9286

Case Number: 129401527163203

Dear Hospice Angelic Care Inc.:

We have approved your information change request. Listed below is the updated information reflected in your Medicare enrollment record.

Medicare Enrollment Information

| | |
|---|---|
| Provider\Supplier name: | Hospice Angelic Care Inc. |
| National Provider Identifier (NPI): | 1104058783 |
| Online Survey, Certification and Reporting system (OSCAR / PTAN) number: | 231614 |
| | Hospice Angelic Care Inc. has transferred to Caring Hospice of Michigan, LLC, effective date of 10/31/2015. |
| | |

| | |
|---|---|
| Fiscal Year End (FYE) if Change of Ownership (CHOW) | 12/31/2015 |

Please verify the accuracy of your enrollment information, if additional changes are necessary or if you have any questions, please call 855-834-5596 between the hours of 8:00 a.m. and 4:00 p.m. eastern time (ET), Monday through Friday.

**Please be advised, if you are a provider in the following states your address change request requires CMS approval before it can be updated in the Fiscal Intermediary Shared System (FISS). These states are: Alaska, American Samoa, Arizona, California, Connecticut, Guam, Hawaii, Idaho, Michigan, Nevada, New York , Northern Mariana Island, Oregon, Washington and Wisconsin. In these cases the change will not be immediate, but will be done as soon as approval is received from CMS. All correspondence will be sent to the former address until the update is made.**



CMS

National Government Services.

MEDICARE

Additional Information

If you are an existing Medicare provider and currently do not submit claims electronically, or are new to the Medicare Program and plan on filing claims electronically, please contact our Electronic Data Interchange Department at 877-273-4334. To start billing the Medicare Program, you must use your NPI on all Medicare claims submissions. Your Provider Transaction Access Number (PTAN) will be the required authentication element for all inquiries to customer service representatives (CSRs), written inquiry units, and the interactive voice response (IVR) systems, for inquiries concerning claims status, beneficiary eligibility and to check status or other supplier related transactions, therefore keep your PTAN secure.

To maintain an active enrollment status in the Medicare Program, regulations found at 42 *Code of Federal Regulations* (CFR), Section 424.516 require that you submit updates and changes to your enrollment information in accordance with specified timeframes. Reportable changes include, but are not limited to changes in: (1) legal business name (LBN)/Tax Identification Number (TIN), (2) practice location, (3) ownership, (4) authorized/delegated officials, (5) changes in payment information such as changes in electronic funds transfer information. (6) final adverse legal actions, including felony convictions, license suspensions or revocations of a health care license, an exclusion or debarment from participation in federal or state health care program, or a Medicare revocation by a different Medicare contractor.

Providers and suppliers may enroll or make changes to their existing enrollment in the Medicare Program using the Internet-based Provider Enrollment, Chain & Organization System (PECOS). To apply via the Internet-based PECOS of to download the CMS-855 enrollment applications go to http://www.cms.gov/MedicareProviderSupEnroll/.

Sincerely,

Provider Enrollment Analyst
National Government Services, Inc.
Provider Enrollment

**PECOS Web—your ticket to fast, secure, online enrollment** https://pecos.cms.hhs.gov



CMS

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
Midwest Division of Survey and Certification
Chicago Regional Office
233 North Michigan Avenue, Suite 600
Chicago, IL 60601-5519

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

CMS Certification Number (CCN): 23-1614
National Provider Identifier (NPI):1104058783

January 13, 2016
(Via Certified Mail)

Melanie Hayes
Administrator
Hospice Angelic Care, INC
314 West M-55
Tawas City, MI 48763

**Subject:** Medicare Change of Ownership Denial

Dear Ms. Hayes:

We were notified that the hospice, Hospice Angelic Care, INC changed ownership effective October 31, 2015, and that it is now known as Caring Hospice of Michigan, LLC.

However, upon review of the supporting documents submitted to the Michigan Department of Licensing & Regulatory Affairs (MDLRA) and to National Government Services (NGS), CMS determined that the hospice relocated from 314 West M-55, Tawas City, Michigan 48763 to 42213 Ann Arbor Road East, Plymouth, Michigan 48170. The hospice's new location is approximately 170 miles away from its original location. This move appears to have been concurrent with the hospice's change of ownership.

Per the State Operations Manual (SOM), section 3210.1B5 – "Relocation of Provider/Supplier Concurrent with CHOW":

> A new owner may propose to relocate the provider/supplier concurrent with the CHOW. If the relocation is to a site in a different geographic area serving different clients than previously served and employing different personnel to serve those clients, do not assign the agreement to the new owner. The provider/supplier must be treated as a new applicant to the Medicare program, rather than as an address change of an existing provider.

CMS has determined that the hospice's relocation from Tawas City, Michigan to Plymouth, Michigan put the hospice in a new geographic area within the meaning of section 3210.1B5. Therefore, CMS does not approve reassignment of your provider agreement to Caring Hospice of Michigan, LLC. In addition, based upon Caring Hospice of Michigan's purchase of the hospice and relocation to a site approximately 170 miles away, we have determined that, as of **October 31, 2015,** your organization is no longer providing services to the Tawas City, Michigan community as a hospice certified under CCN 23-1614.

Cessation of business is deemed to be a voluntary termination by the provider, effective with the date on which it stopped providing services to the community. See 42 CFR § 489.52(b)(3). Therefore, your participation in the Medicare program is hereby terminated effective as of **October 31, 2015**.

In accordance with your Health Insurance Benefits Agreement, public notice of termination of the agreement is necessary. Please publish a notice in the local newspaper with the widest circulation as soon as possible. The notice should read as follows:

> "The (Provider Name and Address) will no longer participate in the Medicare program (Title XVIII of the Social Security Act) effective (Date). The agreement between the (Provider) and the Secretary of Health and Human Services will be terminated on (Date) in accordance with the provisions of the Social Security Act.
>
> No payment will be made by the Medicare program under this agreement for covered services furnished to patients who are admitted on or after (Date)."
>
> (Name of authorized official)
> (Name of Provider)

Please send us a copy of the published notice.

Beneficiaries whose plan of treatment was established before October 31, 2015 continue to be entitled to have payment made on their behalf for covered services furnished on or after October 31, 2015, but only through November 30, 2015. For these beneficiaries, reports and billing forms should continue to be submitted.

If you have any questions, please contact Michael Potjeau, of my staff, at (312) 353-4363.

Sincerely,

Pam L. Thomas

Pam L. Thomas
Branch Manager
Non-Long Term Care Certification & Enforcement Branch

cc: Michigan Department of Licensing & Regulatory Affairs
Bureau of Health Systems
Michigan Department of Community Health
Medical Services Administration
National Government Services – 06004
Michigan Peer Review Organization

Randolph L. Brown
COO
Caring Hospice of Michigan, LLC
42213 Ann Arbor Road East
Plymouth, MI 48170

JS 44 (Rev. 11/15)

# CIVIL COVER SHEET

County in which action arose: ____________

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

Melanie Renee Hayes

**(b)** County of Residence of First Listed Plaintiff Iosco
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Case: 1:16-cv-13583
Judge: Ludington, Thomas L.
MJ: Morris, Patricia T.
Filed: 10-06-2016
IFP Melanie Renee Hayes v. David Rosenbaum (dw)

**DEFENDANTS**

David Rosenbaum

County of Residence of First Listed Defendant Ocean
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Mr. Steven Z Cohen
26862 Woodward Ave. Ste 200
Royal Oak, MI 48067-0959

**II. BA[SIS OF JURISDICTION]**

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**[III. C]ITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☒ 360 Other Personal Injury Cancer
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities Employment
- ☐ 446 Amer. w/Disabilities Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729 (a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from Another District *(specify)* ☐ 6 Multidistrict Litigation

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:

Brief description of cause:

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. **DEMAND $** CHECK YES only if demanded in complaint: **JURY DEMAND:** ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions):* JUDGE ____________ DOCKET NUMBER ____________

DATE 10-6-2016 SIGNATURE OF ATTORNEY OF RECORD (signature)

**FOR OFFICE USE ONLY**

RECEIPT # ________ AMOUNT ________ APPLYING IFP ________ JUDGE ________ MAG. JUDGE ________

# PURSUANT TO LOCAL RULE 83.11

1. Is this a case that has been previously dismissed? ☐ Yes ☐ No

If yes, give the following information:

Court: ______________________________

Case No.: ______________________________

Judge: ______________________________

2. Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.) ☐ Yes ☐ No

If yes, give the following information:

Court: ______________________________

Case No.: ______________________________

Judge: ______________________________

Notes :

# New Lawsuit Check List

**Instructions: Put a check mark in the box next to each appropriate entry to be sure you have all the required documents.**

| | | |
|---|---|---|
| ☒ | Two (2) completed **Civil Cover Sheets.** | Case: 1:16-cv-13583<br>Judge: Ludington, Thomas L.<br>MJ: Morris, Patricia T.<br>Filed: 10-06-2016<br>IFP Melanie Renee Hayes v. David Rosenbaum (dw) |
| ☒ | Enter the number of defendants named in your lawsuit in the blank below, add 2 and then enter the total in the blank.<br>1 (# of Defendants) + 2 = 3 (Total) **Complaints.**<br>Received by Clerk: dw Addresses are complete: ✓ | |
| ☐ | If any of your defendants are **government agencies**:<br>Provide two (2) extra copies of the **complaint** for the U.S. Attorney and the Attorney General. | |

| **If Paying The Filing Fee:** | | **If Asking That The Filing Fee Be Waived:** | |
|---|---|---|---|
| ☐ | Current new civil action filing fee is attached.<br>Fees may be paid by check or money order made out to:<br>*Clerk, U.S. District Court*<br>Received by Clerk: ______ Receipt #:______________ | ☒ | Two (2) completed **Application to Proceed in District Court without Prepaying Fees or Costs** forms.<br>Received by Clerk: dw |

**Select the Method of Service you will employ to notify your defendants:**

| **Service via Summons by Self** | | **Service by U.S. Marshal** (Only available if fee is waived) | | **Service via Waiver of Summons** (U.S. Government cannot be a defendant) | |
|---|---|---|---|---|---|
| ☐ | Two (2) completed **summonses** for each defendant including each defendant's name and address.<br>Received by Clerk: ______ | ☒ | Two (2) completed **USM – 285 Forms** per defendant, if you are requesting the U.S. Marshal conduct service of your complaint. | ☐ | You need not submit any forms regarding the Waiver of Summons to the Clerk.<br>Once your case has been filed, or the Application to Proceed without Prepaying Fees and Costs has been granted, you will need:<br>• One (1) **Notice of a Lawsuit and Request to Waive Service of a Summons** form per defendant.<br>• Two (2) **Waiver of the Service of Summons** forms per defendant.<br>Send these forms along with your filed complaint and a self-addressed stamped envelope to each of your defendants. |
| | | ☒ | Two (2) completed **Request for Service by U.S. Marshal** form.<br>Received by Clerk: dw | | |

**Clerk's Office Use Only**

Note any deficiencies here: None